UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GINA MITCHELL,

         *Plaintiff*,

   v.

KILOLO KIJAKAZI,[1]
Acting Commissioner of Social Security,

         *Defendant*.

No. 19-cv-2560 (DLF)

## MEMORANDUM OPINION & ORDER

In this action, plaintiff Gina Mitchell challenges the Social Security Commissioner's denial of her claim for Supplemental Security Income Benefits. Before the Court is the plaintiff's Motion for Judgment of Reversal, Dkt. 7, and the defendant's Motion for Judgment of Affirmance, Dkt. 9. For the reasons that follow, the Court will deny Mitchell's motion and grant the Commissioner's motion.

**I.   BACKGROUND**

    **A.  Factual Background**

Gina Mitchell is a mother in her mid-fifties living in Washington, D.C., with a high-school education and a computer-operator-specialist certificate, *see* A.R. 26, 243, 347–48, 542–43, 879. She has not held a job since 1999 when she fell while power-washing stadium seats, injuring her neck, shoulder, and knee. A.R. 46–47; *see* A.R. 225. Since then (if not before),

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kijakazi is substituted automatically for Andrew Saul as defendant.

Mitchell has suffered from various maladies including headaches,[2] A.R. 53–54, 242, 380; asthma, A.R. 356, 366; hypertension, A.R. 352; shoulder, spine, and knee pain, A.R. 242, 670, 673–76; and bipolar disorder, personality disorder, and depression, A.R. 352, 677.  She has been abused several times in her life and has been medically treated for that trauma.  *See* A.R. 347–348.  She also has used illicit drugs to cope with that trauma.  *See* A.R. 348, 545, 547, 606.  Throughout the past two decades, Mitchell has received treatment from a host of medical providers.  *See, e.g.*, A.R. 322, 451–536, 605–14, 1085–98, 1100–1248.

### B. Procedural Background

Mitchell first sought disability benefits in 2009.  A.R. 86.  The Social Security Administration considered her application, denied it in 2010, then reconsidered her application, and denied it again in 2011.  *Id.*  In 2012, Mitchell applied a second time, and again the Administration considered, denied, reconsidered, and denied her application.  *Id.*  Mitchell requested a review by and a hearing before an administrative law judge (ALJ).  *See id.*  But the ALJ found nothing different—in 2015, he, too, denied her claim.  A.R. 78.

In 2016, fewer than nine months later, she applied for disability benefits a third time.  A.R. 13.  The Administration again denied her application, and the ALJ again agreed with the Administration.  *See generally* A.R. 13–29.  Mitchell, the ALJ said, was not disabled, at least within the definition of the Social Security Act.  *See* A.R. 28.  In his decision, the ALJ relied on medical opinions from four medical experts.  *See* A.R. 23–24.  Although none of these experts had treated Mitchell consistently, the ALJ found that their opinions aligned with "the totality of medical evidence in the record," A.R. 24, and thus he gave their opinions controlling weight.

---

[2] Mitchell testified to the ALJ that she had been hit in the head with a baseball bat in (approximately) 2016, *after* her last denial of benefits.  A.R. 51–52.  But her medical records indicate that she told her physician that the baseball-bat injury occurred in 2013.  *See* A.R. 380.

2

*See* A.R. 23, 24.  Conversely, the ALJ gave "little weight" to the opinions of Dr. Hollis and Dr. Johnson, the physician and psychiatrist who had treated Mitchell consistently, because he found their opinions to be "conclusory," "vague," and "medically inconsistent."  *See* A.R. 24–25.

Mitchell requested that the Administration's Appeals Council review the ALJ's decision.  A.R. 1.  But the Council "found no reasons under [its] rules" to do so.  *Id.*  That denial converted the ALJ's decision into the final decision of the Social Security Commissioner.  *Id.*

Mitchell then sought review in this Court.  *See id.*; *see generally* Compl., Dkt. 1.  She now requests that the Court either reverse the Commissioner's decision or remand the case for a new hearing.  Compl. 2.

## II.   LEGAL STANDARD

### A.  Statutory and Regulatory Framework

"To qualify for disability benefits under Title XVI (Supplemental Security Income) of the Social Security Act, a claimant must establish that [she] is disabled."  *Jones v. Astrue*, 647 F.3d 350, 352 (D.C. Cir. 2011) (citing 42 U.S.C. §§ 1381 *et seq.*).  The Act defines disability as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A); *accord* 20 C.F.R. § 416.905(a) (2021).  The impairment must be severe and must render the individual unable to perform both "previous work" and "any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B); *accord* 20 C.F.R. § 416.905(a).

The Administration uses a five-step process to determine whether a claimant is disabled.  20 C.F.R. § 416.920(a)(4).  The claimant bears the burden at the first four steps.  *Butler v.*

*Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).  First, the claimant must show that she is not presently engaged in "substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i).  Second, she must demonstrate that she has a "severe impairment" that "significantly limits [her] physical or mental ability to do basic work activities."  20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c).  Third, the claimant must show that her impairments or combination of impairments "meets or equals" one of the listings at 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. § 416.920(a)(4)(iii).  If they do, then the claimant is deemed disabled, and the inquiry ends.  *Id.*  If not, the ALJ must proceed to the fourth step, which requires the ALJ to determine the claimant's residual functional capacity and consider whether, in light of that capacity, the claimant can still perform work that she has done within the past 15 years (if the claimant has indeed done such work).  *See* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.960(b)(1).  Fifth, if the claimant's capacity indicates that she cannot engage in past work, then the burden shifts to the Commissioner to prove that the claimant's capacity, age, education, and past work experience indicate that she is able to perform "other work" that exists in the national economy.  20 C.F.R. § 416.920(a)(4)(v); *Butler*, 353 F.3d at 997.

### B.  Judicial Review

"In a disability proceeding, the ALJ 'has the power and the duty to investigate fully all matters in issue, and to develop the comprehensive record required for a fair determination of disability.'"  *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989) (quoting *Diabo v. Sec'y of Health, Educ. & Welfare*, 627 F.2d 278, 281 (D.C. Cir. 1980)).  Once an ALJ issues a decision, the claimant may seek review by the Administration's Appeals Council.  20 C.F.R. § 416.1467.  If the Council denies review, the ALJ's decision becomes the final decision of the Administration's Commissioner.  *See* 20 C.F.R. § 416.1481.

The Social Security Act gives federal district courts review over the Commissioner's final decisions. 42 U.S.C. §§ 405(g), 1383(c)(3). A reviewing court must affirm the Commissioner's decision if it is supported by substantial evidence, *see* § 405(g), and if it correctly applied the relevant legal standards, *Butler*, 353 F.3d at 999. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). This standard "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365–66 (D.C. Cir. 2003) (internal quotation marks omitted). "Substantial-evidence review is highly deferential to the agency fact-finder." *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008). On review, the "plaintiff bears the burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied." *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C. 2015) (quoting *Muldrow v. Astrue*, No. 11-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012)). Further, the reviewing court may not replace the ALJ's judgment "concerning the credibility of the evidence with its own." *Goodman v. Colvin*, 233 F. Supp. 3d 88, 104 (D.D.C. 2017) (internal quotation marks omitted). Rather, "[t]he credibility determination is solely within the realm of the ALJ." *Grant v. Astrue*, 857 F. Supp. 2d 146, 156 (D.D.C. 2012).

Finally, the Social Security Administration guides its ALJs to provide a "narrative discussion" connecting the medical evidence to the ALJ's conclusions about the claimant's capacity. *See* Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims (July 2, 1996), *available at* 1996 WL 374184, at *7.

**III.   ANALYSIS**

Mitchell first challenges the ALJ's assessment of Mitchell's residual functional capacity. Pl.'s Mem. Supp. Mot. for J. of Rev. at 4, Dkt. 7-1.  Second, Mitchell raises three separate issues all pertaining to the ALJ's assessment of her capacity: (1) the ALJ's recommendation for two-hour increments of work; (2) the ALJ's consideration of Mitchell's concentration, persistence, and pace; and (3) the ALJ's consideration of Mitchell's migraines.  *Id.* at 8–16.

**A. The ALJ Properly Assessed Mitchell's Residual Functional Capacity.**

The ALJ sufficiently supported his conclusions about Mitchell's residual functional capacity.  An ALJ's conclusion is sufficient so long as it is supported by substantial evidence in the record.  *See Williams v. Shalala*, 997 F.2d 1494, 1499 (D.C. Cir. 1993).  The ALJ must "consider[] the record as a whole and discuss[] which evidence he found credible and why." *Goodman*, 233 F. Supp. at 112.  But the ALJ need only provide a logical connection between the evidence and his conclusion to suffice for judicial review, *see Thomas v. Astrue*, 677 F. Supp. 2d 300, 306 (D.D.C. 2010), not an articulation of each function and its implication on the ALJ's overall conclusion of the claimant's residual capacity, *see Kim K. v. Kijakazi*, No. 20-cv-2072-GMH, 2021 WL 4033060, at *7 (D.D.C. Sep. 3, 2021).[3]

---

[3] Whether an ALJ must discuss each of the seven strength demands with particularity is an unsettled question.  *See Kim K.*, 2021 WL 4033060, at *7.  Although the D.C. Circuit has not yet considered this issue, several judges in this district and four other circuits have taken the approach that "an ALJ need not expressly discuss a claimant's capacity to perform each work-related function before classifying the claimant's [Residual Functional Capacity] in exertional terms."  *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (collecting cases from the Sixth, Seventh, and Ninth Circuits)); *see id.* (collecting D.D.C. cases).  The requirement of addressing all seven, *see id.* (citing SSR 96-8p, 1996 WL 374184), does not obligate the ALJ to create a "written articulation of all seven strength demands;" rather it can instead be met through a narrative explanation, *id.* (quoting *Banks v. Astrue*, 537 F. Supp. 2d 75, 85 (D.D.C. 2008)).

Here, in more than six-and-a-half, single-spaced pages, the ALJ accounted for Mitchell's maladies and how they affect her capacity. *See* A.R. 20–26. His account concluded with six paragraphs detailing how much weight each medical opinion merited and why those weights varied. *See* A.R. 23–26. While this Circuit ascribes substantial weight to a treating physician's opinion, the ALJ may discount that opinion if it is "contradicted by substantial evidence." *See Williams*, 997 F.2d at 1498 (internal quotation marks omitted). That is what happened here. *See* A.R. 23–26. The ALJ found that "[t]here are no severe mental or physical findings by her treating providers, who merely offer conclusory and unsupported medical opinions[,] because their personal observations on examination show few severe abnormalities." A.R. 26. The ALJ also found that Mitchell's primary care physician's opinion was "vague" and failed to provide an "explanation of medical findings to support her conclusion that the claimant's medical conditions caused specific functional limitations." A.R. 25. Further, the ALJ found that the four non-treating experts were more credible than Mitchell's two treating physicians. A.R. 23–25. And credibility of medical experts is the ALJ's domain, not this Court's. *See* 42 U.S.C. § 405(g); *Brown v. Bowen*, 794 F.2d 703, 709 (D.C. Cir. 1986) (explaining that "[t]he ALJ is certainly entitled to weigh conflicting opinions" of doctors and "make his own assessment of their credibility").

Although the ALJ detailed more of Mitchell's medical history than he detailed *why* that history resulted in his conclusions, *see generally* A.R. 13–29, the ALJ still supported his conclusions with substantial evidence. First, the ALJ synthesized the entire medical record by type of issue. *Id.* And with a 1,200-page medical record, synthesis itself required analysis. More importantly, the ALJ explained, if perfunctorily, (1) why he endorsed or discounted each medical opinion, A.R. 23–25; (2) why he did not find Mitchell's testimony credible, A.R. 25–26;

7

and (3) why he found that—despite Mitchell's impairments—her residual functional capacity still allowed her to work, *id.* His explanations offered a logical connection between the evidence that he synthesized and his conclusions about Mitchell's capacity to work, and that bridge suffices for reviewability. *Compare Banks*, 537 F. Supp. 2d at 85 ("Since the ALJ explained why he discounted certain opinions and provided a 'logical bridge' between the evidence and his conclusion, he met the standards required under SSR 96-8p, and should not be reversed by this Court."), *with Brown v. Colvin*, 219 F. Supp. 3d 121, 128 (D.D.C. 2016) ("[T]he first paragraph is merely a summary of Plaintiff's allegations of mental impairments, and the second paragraph is simply a credibility determination of the state medical consultant's opinion. There is no 'logical bridge' between the evidence and the ALJ's RFC determination on Plaintiff's mental capacity."). The ALJ both supported his conclusions with substantial evidence and properly applied the relevant law.

### B. The ALJ Properly Accounted for Mitchell's Mental Limitations.

#### 1. *The ALJ properly supported his recommendation for two-hour increments of work.*

The ALJ sufficiently supported his conclusion that two-hour increments of work are appropriate for Mitchell given her "*moderate* limitations for concentration, persistence, and maintaining pace." A.R. 26 (emphasis added). Because a narrative discussion is sufficient explanation, *see Davis v. Berryhill*, 272 F. Supp. 3d 154, 172 (D.D.C. 2017) (approving an ALJ's "thorough narrative discussion" as a sufficient explanation); *cf. Banks*, 537 F. Supp. 2d at 85 ("[A] written function-by-function analysis is not required."), an ALJ need not describe the specific formula and its variables that resulted in his conclusion that the claimant could complete

two hours of work before taking an extended break.  This narrative discussion need only connect the evidence to the ALJ's conclusions.  *See* SSR 96-8p, 1996 WL 374184, at *7.

Here, the ALJ found Mitchell's mental impairments to be, at worst, moderate (for "interacting with others" and "concentrating, persisting, or maintaining pace") and, at best, nonexistent (for "adapting or managing oneself").  *See* A.R. 18–19.  He also noted that "[Mitchell's] mental status examination findings of [her treating physician] were remarkably normal."  A.R. 23.  And those findings mirrored those of the D.C. Department of Behavioral Health in 2015, *see* A.R. 23 (reporting no impairments rising to the level of disability), another mental-health expert in 2016, *see* A.R. 23–24 (same), and yet another mental-health expert in 2017, *see* A.R. 24 (same).[4]

The ALJ's work-time recommendation accounted for Mitchell's deficiencies.  He found that Mitchell needed "non-exertional mental limitations" on her work.  A.R. 26.  But he did *not* find that those two-hour increments should demand intense focus but rather that they should contain no more than "simple 1–4 step, routine, repetitive tasks."  *Id.*  The ALJ also found that Mitchell "must work in a low-stress environment" with "only occasional decision making," "occasional contact with co-workers, supervisors, and the general public," and (at most) a moderate pace.  A.R. 20.  These qualifications to Mitchell's work time sufficiently show that the ALJ accounted for her limitations.

> 2. *The ALJ properly accounted for Mitchell's limitations of concentration, persistence, and pace in her residual functional capacity.*

As Mitchell herself highlights, the ALJ reasonably accounted for her "mental impairment limitations" in his decision.  *See* Pl.'s Mem. at 12; A.R. 25–26; *see also Brown v. Saul*, No. 18-

---

[4] Mitchell's mental-health expert in 2012 was inconclusive on this front because she was unsure "whether the claimant would have performed better if she took her medication."  A.R. 21.

9

cv-1294, 2020 WL 5653696, at *4 (D.D.C. Sept. 23, 2020) (citation omitted) (an ALJ's decision suffices so long as it reasonably accounts for the plaintiff's mental limitations).  In the same sentence where Mitchell posits that the ALJ did not include any limitations on her concentration, persistence, and pace, she recounts the specific limits that the ALJ placed on her concentration, persistence, and pace:

> . . . [The ALJ] failed to include any limitation on concentration, task persistence or pace in her residual capacity assessment, and instead *limited* [her] to the performance of simple one to four step routine, repetitive tasks in two-hour increments with 10 to 15 minute breaks in between, and was *limited* to work in a low stress work environment, which was defined as requiring only occasional decision making and occasional changes in the work setting, where there would only be occasional contact with co-workers, supervisors, and the general public, and *which would not require a fast pace* or production quotas, such as would customarily be found on an assembly line.

Pl.'s Mem. at 12 (emphasis added) (citing A.R. 20).  Limited, simple, routine, repetitive, low-stress work with regular breaks, occasional decisions, and moderate pace, *see* A.R. 20, 26, *are* limitations. Mitchell herself concedes as much.

### 3. *The ALJ properly accounted for Mitchell's migraines.*

Finally, in assessing Mitchell's migraines, the ALJ did what he must do: He considered the medical evidence and drew a logical connection between that evidence and his conclusion. *See Cunningham v. Colvin*, 46 F. Supp. 3d 26, 36 (D.D.C. 2014).  As Mitchell highlights, Pl.'s Opp'n at 5, Dkt. 12, the Administration's medical experts found her migraines to be severe, A.R. 91, 107.  Yet severity as determined by a physician does not equate to disability as determined by a judge.  Instead, "the impairment [or combination of impairments] must be severe enough to prevent the claimant from doing his previous work and work commensurate with his age, education, and work experience that exists in the national economy." *Tripp v. Astrue*, 864 F. Supp. 2d 120, 124 (D.D.C. 2012) (citing 42 U.S.C. § 423(d)(2)(A)); *see also McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained

disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."); *Wallschlaeger v. Schweiker*, 705 F.2d 191, 196 (7th Cir. 1983) ("If you have a severe impairment, 'we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. *If you can still do this kind of work, we will find that you are not disabled*.' So if [the plaintiff] either does not have a severe impairment, or *has a severe impairment but not one that prevents her from doing the kind of work she has done in the past*, she is not disabled no matter how many years ago she last worked." (quoting 20 C.F.R. § 416.920(e)) (second emphasis added)).

In Mitchell's case, the experts found that she suffered from other severe disorders (e.g., Mitchell's alcohol and substance-abuse disorders, her affective disorders, her spinal disorders, and her muscular disorders), but they nonetheless agreed that she was not disabled. A.R. 91, 107. In light of their findings, the ALJ recognized that "[Mitchell] has numerous medically determinable impairments." A.R. 25. But like the experts, he found that her mental impairments did not rise to the level of disability to qualify her for supplemental income. *See id.* ("However, the medical evidence of record fails to show that any impairment or combination of impairments causes disabling functional limitations for work activity."). In other words, he concluded that despite her headaches (migraines), Mitchell could still work. *See id.*

Substantial evidence supports this finding. For example, Mitchell denied headaches (and, at times, specifically denied migraines) in 2013, *see* A.R. 357; in 2014, *see* A.R. 476; in 2015, *see* A.R. 392; and in 2018, *see* A.R. 1108. And in 2016, over the course of 17 visits with the D.C. Department of Behavioral Health, the providers' records refer to headaches only once. *See* A.R. 542–603 (relaying issues like difficulty thinking clearly, poor sleep, high stress, low

11

energy, fatigue, alcohol abuse, marijuana abuse, depression, bipolar disorder, and schizophrenia, but not migraines). *But see, e.g.*, A.R. 380 (referencing, in 2015, "[h]eadaches after head trauma (bat)"); A.R. 638 (same, in 2017); A.R. 671 (showing, in 2017, MRI results that suggest hypersensitivity leading to migraines); A.R. 53–54 (transcribing Mitchell's testimony of debilitating daily migraines). Thus, even if the ALJ could have recounted more of these conflicting sources, substantial evidence nonetheless supports his finding.

Further still, the experts called Mitchell's migraines a "secondary" priority. A.R. 107. Taken together, the experts' findings suggest that however severe Mitchell's migraines were, they were not disabling under the Social Security Act. *See id.* The ALJ underscored this conclusion by explaining "that the claimant's statements concerning the intensity, persistence, and limiting effects of these [mental] symptoms are not entirely consistent with the medical evidence and other evidence in the record." A.R. 26; *see also id.* ("The most recent mental status examinations show normal mental function."). And the ALJ expressly rejected her treating physician's medical opinion on this because there were "no severe mental or physical findings by her treating providers, who merely offer[ed] conclusory and unsupported medical opinions because their personal observations on examination show[ed] few severe abnormalities." *Id.* This suggests that the ALJ did in fact consider Mitchell's migraines, along with her other symptoms, and simply disagreed with Mitchell as to their impact.

The fact that the ALJ did not explicitly refer to Mitchell's migraines does not mean that they were not among the many symptoms he considered. *See* A.R. 20 (ALJ recognizing that Mitchell reported "headaches" as a reason she could not work); A.R. 24–25 (ALJ recognizing that Dr. Hollis, Mitchell's treating primary care physician, opined that Mitchell "was permanently disabled" in part because of "headaches caused by trauma," but that the opinion was

entitled to "little weight" because it was "vague," without definition or explanation of "the extent of the limitations she offered," and "conclusory"); *Goodman*, 233 F. Supp. 3d at 109 ("[T]here is 'no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." (quoting *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014)); *see also* 42 U.S.C. § 1382c(a)(3)(G) (directing the Commissioner of Social Security to "consider the combined effect of all of the individual's impairments" rather than each impairment separately). The limitations that the ALJ incorporated in Mitchell's residual functional capacity clearly recognized her mental impairments. Considering the record as whole, the Court concludes that the ALJ did not "ignore[] an entire line of evidence that [would] support[] a disability finding," *Goodman*, 233 F. Supp. 3d at 109 (quoting *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2103)), but instead properly accounted for Mitchell's symptoms, including her migraines.[5]

## IV.   CONCLUSION

The Court must affirm the Commissioner's final decision if he supported it with substantial evidence and correctly applied the relevant legal standards. *See* 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390, 401; *Butler*, 353 F.3d at 999. He did both. Accordingly, it is

**ORDERED** that the Defendant's Motion for Judgment of Affirmance, Dkt. 9, is **GRANTED**; it is further

**ORDERED** that the Plaintiff's Motion for Judgment of Reversal, Dkt. 7, is **DENIED**.

The Clerk of Court is directed to close the case.

---

[5] Given the substantial evidence that supports the ALJ's conclusion, *see supra* at 11, it "would be an idle and useless formality" to remand the case to the ALJ to address Mitchell's migraines explicitly. *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969). "[W]e will not remand a case for further specification when we are convinced that the ALJ will reach the same result." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citation omitted) (finding that, although the ALJ's method was "not a model for compliance," "[t]he ALJ's failure . . . was harmless").

**SO ORDERED.**

_____
DABNEY L. FRIEDRICH
United States District Judge

November 15, 2021